## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**MICHELE T.,**[1]

       **Plaintiff,**

                                 **Case No. 1:22-cv-2231**

  **v.**                              **Magistrate Judge Norah McCann King**

**MARTIN J. O'MALLEY,**
**Commissioner of Social Security,**

       **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Michele T. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin J. O'Malley, the Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

I.      PROCEDURAL HISTORY

Plaintiff filed her applications for disability insurance benefits and supplemental security income on December 6, 2018, and November 30, 2018, respectively, alleging that she has been disabled since June 10, 2017. R. 70, 102–03, 224–33. The applications were denied initially and upon reconsideration. R. 106–10, 112–17. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 118–19. ALJ Mary Ann Poulose held a hearing on April 12, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 30–63. In a decision dated April 20, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 10, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 15–24. That decision became final when the Appeals Council declined review on February 15, 2022. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 18, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[3] On May 8, 2023, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

II.     LEGAL STANDARD

A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record").  Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of

Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see

K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 50 years old (*i.e.,* closely approaching advanced age) on her alleged disability onset date. R. 71, 86. She met the insured status requirements of the Social Security Act through June 30, 2018. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 10, 2017, her alleged disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff's anemia and lumbar degenerative disc disease were severe impairments. R. 18.  The ALJ also found that hypertension, alcohol abuse, cirrhosis, and major depressive disorder were not severe. R. 18–19. The ALJ further found that Plaintiff's alleged transient ischemic attack was not a medically determinable impairment. R. 19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 20–24. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a school secretary. R. 23–24. The ALJ therefore

concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 10, 2017, her alleged disability onset date, through the date of the decision. R. 23–24.

Plaintiff disagrees with the ALJ's findings at steps two and four and also argues that the ALJ and the Appeals Council were not properly appointed. *Plaintiff's Brief in Support of the Complaint*, ECF No. 7; *Plaintiff's Reply Brief*, ECF No. 9. Plaintiff asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Id.* The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 8.

## IV.   APPOINTMENTS OF FORMER ACTING COMMISSIONER, THE ALJ, AND THE APPEALS COUNCIL JUDGE

Plaintiff argues that, because the initial 210-day acting service period lapsed on November 16, 2017, before the submission of Andrew Saul's nomination in April 2018, Nancy Berryhill, the former Acting Commissioner, could not serve as Acting Commissioner during the pendency of Saul's nomination. *Plaintiff's Brief in Support of Complaint*, ECF No. 7, pp. 18–20 (citing, *inter alia*, Federal Vacancies Reform Act, 5 U.S.C. § 3346(a) ("FVRA"); SSR 19-1p); *Plaintiff's Reply Brief*, ECF No. 9, pp. 5–11. Plaintiff argues that Ms. Berryhill therefore could not lawfully ratify and approve the appointments of SSA ALJs and Appeals Council judges, including those who denied Plaintiff's claim throughout the underlying administrative process in this case; Plaintiff therefore urges the Court to adopt the reasoning of *Brian T. D. v. Kijakazi*, 2022 WL 179540 (D. Minn. Jan. 20, 2022) and *Richard J.M. v. Kijikazi*, 2022 WL 959914 (D. Minn. Mar. 30, 2022) (relying on the reasoning in *Brian T.D.*).

Plaintiff's arguments are not well taken. As a preliminary matter, since the filing of

Plaintiff's briefs, the Court of Appeals for the Eighth Circuit has reversed *Dahle v. Kijakazi*, 62

F.4th 424 (8th Cir. 2023), *cert. denied* __ S.Ct. __, 2024 WL 71921 (Jan. 8, 2024). The Court of

Appeals in *Dahle* agreed with the Commissioner that, *inter alia*, the FVRA authorizes an

"individual who has ceased serving [the 210-day term] under [Section] 3346(a)(1) to begin

serving again under [Section] 3346(a)(2) once a nomination is sent to the Senate." *Id*. at 427.

In addition, this Court has previously rejected similar challenges to Ms. Berryhill's

authority and her appointments of ALJs and Appeals Council judges:

> [T]his Court finds that Berryhill was validly serving as Acting Commissioner under
> 5 U.S.C. § 3346(a) of the FVRA when she ratified the appointment of Plaintiff's
> ALJ in 2018. From January 20, 2017 to November 16, 2017, Berryhill served as
> Acting Commissioner. Following the expiration of Berryhill's initial 210-day term,
> from November 2017 to April 2018, the position of Commissioner became vacant,
> and Berryhill no longer served under the official title of Acting Commissioner.
> During that time, she continued to functionally lead the SSA from her prior position
> as Deputy Commissioner of Operations. . . . And pursuant to this Court's finding
> *supra*, that the two time periods in § 3346(a)(1) and (a)(2) were inclusive, Berryhill
> remained eligible to return to her official title as Acting Commissioner upon the
> submission of a nomination. Thus, on April 17, 2018, upon the nomination of Saul,
> § 3346(a)(2) permitted Berryhill to spring back into her role as Acting
> Commissioner during the nomination's pendency. Therefore, Plaintiff's ALJ was
> properly appointed.

*Hernandez v. Kijakazi*, No. CV 22-01556, 2022 WL 17751355, at *16 (D.N.J. Dec. 19, 2022)

(citations omitted). Other district courts in this circuit have also rejected these challenges. *See*

*Kring-Schreifels v. Kijakazi*, No. CV 22-110, 2023 WL 3097210, at *9–10 (E.D. Pa. Apr. 26,

2023) (noting that *Dahle* reversed *Brian T.D.* and "joined numerous district courts which have

uniformly (other than *Brian T.D.*) rejected the argument that Acting Commissioner Berryhill was

serving in violation of the FVRA when she appointed ALJ and Appeals Council judges on July

16, 2018. . . The conclusion reached by these myriad courts is consistent with principles of

statutory construction and the FVRA's legislative history, and also with the commonsense need

for the federal government to continue functioning, which underlies the FVRA.") (citations omitted); *Etze v. Kijakazi*, No. CV 22-32, 2023 WL 3689701, at *9 (E.D. Pa. May 26, 2023) ("Under this guidance [from *Dahle*], I find Ms. Berryhill's authority as Acting Commissioner resumed on the date of Mr. Saul's nomination on April 17, 2018 and until Mr. Saul assumed office on June 17, 2019. Ms. Berryhill acted lawfully in July 2018 when she ratified the appointments of the ALJ and AAJs. Because the ALJ and AAJs were properly appointed, their decisions are valid and I reject Ms. Etze's argument."); *May v. Kijakazi*, No. CV 21-4055, 2023 WL 3097652, at *17–19 (E.D. Pa. Apr. 26, 2023) (noting that *Dahle* reversed *Brian T.D.* and that "numerous district courts . . . have uniformly (other than Brian T.D.) rejected the argument that Acting Commissioner Berryhill was serving in violation of the FVRA when she appointed ALJ and Appeals Council judges on July 16, 2018" and noting that, "if the FVRA were construed as Plaintiff suggests, an incoming President would be unable to name acting officers to numerous critical offices within the federal government because the 210-day service periods would lapse before the new President could submit nominations to the Senate. Such an outcome would create a dysfunctional paralysis of government contrary to congressional intent").

Considering Plaintiff's heavy reliance of out-of-circuit district court cases whose reasoning has since been rejected by their circuit court, nothing in her briefing in the instant case persuades this Court that the reasoning from district court decisions in this circuit—or from the Eighth Circuit— was erroneous. The Court therefore adopts that reasoning and concludes that Plaintiff has not established that remand is appropriate on this basis.

## V.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Lewis A. Lazarus, Ph.D.

On May 9, 2019, Lewis A. Lazarus, Ph.D., conducted a consultative mental examination

of Plaintiff.[4] R. 629–32. Dr. Lazarus summarized his examination findings as follows:

> The claimant presented to this examination with a cooperative demeanor. Her manner of relating and social skills were adequate. She appeared generally in accord with her stated age. She was appropriately and casually dressed. She was adequately groomed. She utilized no prosthetic devices for vision, hearing or ambulation. Gait was shuffled, posture was slouched, and motor behavior was otherwise normal. Eye contact was appropriate. Speech was fluent and clear with adequate expressive and receptive language functions. Thought processes were coherent and goal directed with no evidence of any hallucinations, delusions, or paranoia in the evaluation setting. Affect was dysphoric, sad, apathetic, hopeless, and tearful. Mood was described as being depressed.
>
> The claimant was noted to be alert and oriented in all spheres including knowing the current President of the United States. *Recent and remote memory skills were considered to be significantly compromised in terms of recent memory and new learning. She was able to immediately recall 3/3 items but could not recall any of the items after only a brief 5-10 minute delay. The presentation of a semantic cue did not improve her recall any further. Attention and concentration were noted to be quite limited. She struggled in doing even simplistic mental calculations and could not do serial 3s correctly. She was able to repeat 5 digits forward but simply could not do any in the reverse order on a digit span task. Intellectually, she is estimated to be functioning in the borderline range at best with a borderline and well below average general fund of knowledge.* Insight is fair to limited as is her judgment.

R. 630 (emphasis added). Dr. Lewis noted Plaintiff's reported activities of daily living and found

that, overall, Plaintiff's allegations were consistent with the examination results:

> The claimant stated that oftentimes she does not take care of herself because of the lack of motivation and desire. The claimant stated that she can do some basic food preparation but is easily overwhelmed. When feeling up to it, she can do some cleaning and laundry. She may go shopping with someone. She and her husband handle the finances together. She can manage her medications and drive. She stated that she only has maybe one friend and does not do anything with them. She does not have very strong family relationships. She has no hobbies or interests. A typical day is spent getting up, having some coffee, maybe doing some household chores, watching television, and usually she is at home unless she has to go out for an appointment.
>
> Overall, the examination results are considered to be consistent with the claimant's

---

[4] On April 24, 2019, Crystal M. Duclos, Psy.D., the reviewing state agency psychologist, noted that medically determinable impairments of, *inter alia*, anxiety and depression appeared in the record, but there was no recent, detailed mental status examination in the file. R. 76. Dr. Duclos therefore directed that Plaintiff be sent for an updated mental status examination. *Id*.

allegations.

*Id*. Dr. Lazarus diagnosed Plaintiff as follows: major depressive disorder, severe, recurrent, without psychotic features, with anxious features; history of chronic pain; history of traumatic brain injury at the age of 19; problems with vocational functioning; problems with marital relationship; and problems with limited availability of appropriate behavioral health care services. *Id*. He recommended "psychiatric intervention as well as individual psychological counseling. Marital counseling may also be necessary to assist the claimant, particularly given her alleged verbal abuse by her husband. The claimant does not appear to be a viable candidate for vocational assessment or rehabilitation at this present time." R. 631. Plaintiff's prognosis was guarded and Dr. Lewis stated that she "is not considered capable of fully and entirely managing her own funds *due to her noted quite significant memory deficits*." *Id*. (emphasis added).

### B.   Crystal M. Duclos, Psy.D.

In May 2019,[5] Crystal M. Duclos, Psy.D., reviewed Plaintiff's medical record upon reconsideration for the state agency. R. 71–101. According to Dr. Duclos, Plaintiff had the medically determinable severe impairments of, *inter alia*, substance addiction disorder (alcohol); depressive, bipolar and related disorders; and anxiety and obsessive-compulsive disorders. R. 78, 93. Dr. Duclos opined that Plaintiff had only mild limitations in the "Paragraph B" areas of functioning of interacting with others and in adapting or managing oneself, but that Plaintiff had moderate limitations in her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace. R. 79, 94. Dr. Duclos further opined, *inter alia*, that

---

[5] Exhibits 3A and 4A, the Court Transcript Index, the ALJ, and the Commissioner all note that Dr. Duclos conducted this examination in May 2019, or specifically, May 28 or 29, 2019. R. 23, 80, 83–84, 95, 99–100; *Court Transcript Index*, p. 1; *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 8, p. 12.

Plaintiff was not significantly limited in her ability to remember locations and work-like procedures and to understand, remember, and carry out very short and simple instructions but that she was moderately limited in her ability to understand, remember, and carry out detailed instructions. R. 82–83, 98. Dr. Duclos also opined that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods. R. 83, 98. According to Dr. Duclos, Plaintiff was not significantly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and that she was able to "carry out simple, routine tasks over a normal workweek." R. 83, 98. Dr. Duclos additionally explained her findings as follows:

> Clmt's alleged symptoms are only partially consistent w /objective evidence. There is a discrepancy in her denial of ETOH use at the exam, where we see that she has been advised to seek ETOH treatment and also was recently in hospital with BAL of 300. While she performed rather poorly at more complex MSE tasks, she was able to perform very simple tasks. She also remains capable of driving alone, she helps manage finances, she can perform self-care tasks and HH chores. Interestingly, on the AOL form she indicates she does not need reminders for self-care or medications, again suggesting she is capable of carrying out 1-2 step routine tasks.

*Id*. Dr. Duclos concluded that Plaintiff was limited to unskilled work because of her impairments. R. 99.

## VI.    DISCUSSION

Plaintiff challenges the ALJ's consideration of her mental impairments at steps two and four, arguing that the ALJ erred in failing to find that she had severe mental impairments and in failing to include limitations in the RFC flowing from those mental impairments *Plaintiff's Brief in Support of Complaint*, ECF No. 7, pp. 13–17; *Plaintiff's Reply Brief*, ECF No. 9, pp. 1–4. In advancing these arguments, Plaintiff contends that the ALJ erred in considering the opinions of

Drs. Lazarus and Duclos. *Id*. The Commissioner takes the position that the ALJ properly considered the record evidence at steps two and four and that the RFC adequately accommodated Plaintiff's functional limitations. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 8, pp. 14–23. For the reasons that follow, this Court concludes that substantial evidence does not support the ALJ's consideration of Dr. Duclos' opinion and the ALJ's RFC determination, but for reasons different than those raised by Plaintiff. *Cf. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.") (citations omitted); *McNeal v. Comm'r of Soc. Sec.*, No. CIV.A. 10-318-J, 2012 WL 1038898, at *3 (W.D. Pa. Mar. 28, 2012) ("The Court does not reach any of the issues raised by Plaintiff but finds that remand is warranted on grounds not raised by the parties.").

Even assuming, without deciding, that any error at step two in failing to find Plaintiff's medically determinable mental impairment of major depressive disorder was harmless, the ALJ's errors at step four in considering the evidence regarding Plaintiff's mental impairment and in crafting the RFC were not. A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v.*

14

*Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In addition, the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[6] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*,

---

[6] As previously noted, Plaintiff's claims were filed on November 30, 2018, and December 6, 2018.

that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination

16

or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b).

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) "except with no exposure to ladders, ropes, or scaffolds, unprotected heights, hazardous machinery, or commercial driving. The claimant is capable of occasional climbing, crouching, crawling, stooping, and kneeling." R. 20. In reaching this determination, the ALJ considered the opinion of Crystal M. Duclos, Psy.D. (although the ALJ did not identify this consultant by name), but found it not persuasive:

> Regarding the claimant's mental impairments, upon reconsideration, a State agency psychological consultant found that the claimant had no more than moderate limitations in the four broad areas of mental functioning (Ex. 3A; Ex. 4A). This opinion is inconsistent with and not supported by the medical evidence in the file. For example, in May 2019, the claimant had a dysphoric and sad affect (Ex. 6F). She indicated that she experienced feelings of hopelessness, apathy, and tearfulness (Ex. 6F). However, she was able to recall 3/3 objects immediately (Ex. 6F). While the claimant's attention and concentration were compromised during the exam, subsequent treatment notes revealed the claimant's attention and concentration were regularly within normal limits (Ex. 6F; Ex. 7F at 5-6; Ex. 8F at 6-9; Ex. 10F at 1-2; Ex. 11F at 1-3). At the hearing, the claimant was able to answer detailed questions about her past relevant work, medical treatment, and activities of daily living (Testimony). While she had some difficulties recalling which of her treating providers performed which procedures, she eventually recalled all the relevant information during the hearing (Testimony). Additionally, the State agency consultant did not examine the claimant personally, nor did they have access to all of the medical evidence in the file, specifically exhibits 7F through 14F. This opinion is not persuasive.

R. 23.

Thus, in finding that Dr. Duclos' opined moderate limitations were unpersuasive, the ALJ concluded, *inter alia*, that this opinion was inconsistent with the medical evidence. *Id*. In making this finding, the ALJ referred to Dr. Lazarus' finding that Plaintiff was able to recall 3/3 objects

immediately and characterized this psychologist's findings regarding attention and concentration as merely "compromised during the exam[.]" *Id.* This Court concludes that the ALJ's characterization of Dr. Lazarus' findings in this regard reflect improper selective citation and minimization of the psychologist's findings. As detailed earlier in this *Opinion and Order*, Dr. Lazarus also found, *inter alia*, that Plaintiff could not recall any of the three objects after "only a brief 5-10 minute delay. The presentation of a semantic cue did not improve her recall any further." R. 630. Dr. Lazarus concluded that Plaintiff's "[a]ttention and concentration were noted to be quite limited. She struggled in doing even simplistic mental calculations and could not do serial 3s correctly. She was able to repeat 5 digits forward but simply could not do any in the reverse order on a digit span task." *Id.* He further found that, "[i]ntellectually, she is estimated to be functioning in the borderline range at best with a borderline and well below average general fund of knowledge. Insight is fair to limited as is her judgment." *Id.* Although Plaintiff could recall 3/3 objects immediately, Dr. Lazarus concluded, based on other findings during his examination, that Plaintiff had "quite significant memory deficits." R. 631 (noting further that Plaintiff "does not appear to be a viable candidate for vocational assessment or rehabilitation at this present time"). Under these circumstances, the Court is not persuaded that Dr. Duclos' opined moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace are inconsistent with Dr. Lazarus' examination findings. R. 71–101, 630–31.

The ALJ also found that Dr. Duclos' opinions were inconsistent with medical evidence because "subsequent treatment notes revealed the claimant's attention and concentration were regularly within normal limits.". R. 23. That finding is similarly flawed. As a preliminary matter, the ALJ cited to Exhibit 6F (R. 629–32) in support of this assertion. R. 23. That exhibit, as

previously noted, is Dr. Lazarus' consultative examination that contains findings reflecting Plaintiff's impaired attention, concentration, and memory. The remaining records to which the ALJ referred, R. 23, make no mention of Plaintiff's attention, concentration, and memory. *See* Exhibit 7F at 5–6 (R. 637–38), Exhibit 8F at 6–9 (R. 657–60), Exhibit 10F at 1–2 (R. 702–03), Exhibit 11F at 1–3 (R. 719–21). Accordingly, nothing in the records relied upon by the ALJ in this regard establishes that Plaintiff's "attention and concentration were regularly within normal limits" or otherwise establish an inconsistency with Dr. Duclos' moderate mental limitations. R. 23.

In finding that Dr. Duclos' findings were inconsistent with the record evidence, the ALJ also relied on his own lay observation of Plaintiff during the administrative hearing and his finding that Plaintiff was able to answer detailed questions and, "[w]hile she had some difficulties recalling which of her treating providers performed which procedures, she eventually recalled all the relevant information during the hearing[.]" R. 23. However, the Third Circuit "has said before that an ALJ's personal observations of the claimant 'carry little weight in cases . . . involving medically substantiated psychiatric disability.'" *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000) (quoting *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984)); *cf. Schroeder v. Berryhill*, No. 3:16-CV-0464, 2017 WL 4250057, at *18–19 (M.D. Pa. Sept. 5, 2017), *report and recommendation adopted*, No. 3:16-CV-464, 2017 WL 4246869 (M.D. Pa. Sept. 25, 2017) ("Here, although the ALJ was permitted to consider his observations of Ms. Schroeder at the hearing, his observation that she was attentive and relatively comfortable is not alone substantial evidence to support an adverse credibility determination or a determination that she can engage in substantial gainful activity. That Ms. Schroeder was able to keep it together for a brief hearing tells little about her credibility or her ability to engage in substantial gainful activity.");

19

*Debartolo v. Colvin*, 21 F. Supp. 3d 404, 415–16 (M.D. Pa. 2014) ("Turning toward

concentration, persistence, and pace, the ALJ cited the same evidence, along with the plaintiff's

demeanor during the hearing, to find he had only moderate restrictions in this area. . . . The ALJ

failed to evaluate the objective medical evidence and findings when rendering this determination.

The evidence and conclusions of the ALJ were not based on 'contradictory medical evidence.' . .

. Rather, it was based on the ALJ's unsupported lay opinion about the plaintiff's ability based on

sparse information taken, according to her decision, exclusively from the hearing testimony.")

(citations omitted). In any event, substantial evidence will not support an ALJ's decision when it

relies on a mischaracterization of—or a selective citation of—the evidence, which the Court

previously highlighted in the ALJ's consideration of Dr. Lazarus' findings and other medical

evidence. *See Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) ("[T]he

ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong

reason.'") (quoting *Morales*, 225 F.3d at 317); *Quinn v. Kijakazi*, No. 3:20-CV-01698, 2022 WL

178824, at *5 (M.D. Pa. Jan. 18, 2022) ("A selective approach to the evidence does not

constitute substantial evidence upon which an ALJ may reasonably rely to deny benefits.")

(citations omitted); *Segal v. Comm'r of Soc. Sec.*, No. CV 19-8839, 2020 WL 2111229, at *6–7

(D.N.J. May 4, 2020) (remanding where "the Court finds that the ALJ nonetheless erred in his

treatment of medical evidence in the record: although the ALJ did not entirely ignore treatment

notes from Plaintiff's providers, he selectively cited portions of these notes, rather than

addressing the conflicting evidence within these records"); *cf. Cotter*, 642 F.2d at 706–07

("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, .

. . [A]n explanation from the ALJ of the reason why probative evidence has been rejected is

required so that a reviewing court can determine whether the reasons for rejection were

20

improper.") (internal citation omitted); *Roberts v. Kijakazi*, No. CV 21-14-CJB, 2022 WL 17403479, at *11 (D. Del. Dec. 2, 2022) ("[A]lthough the ALJ cited to the above-referenced positive therapeutic findings . . . , the ALJ failed to substantively discuss the many negative clinical observations found in those same records" and, "[i]n failing to substantively engage with the above-referenced negative clinical observations and findings, the ALJ rendered it unclear whether she considered any such evidence when determining Roberts' RFC (and if so, why she discounted it)"); *DeJesus v. Kijakazi*, No. 20-CV-06115-RAL, 2022 WL 1062914, at *10 (E.D. Pa. Apr. 8, 2022) ("By dismissing Dr. Kingry's opinion through conclusory statements, mischaracterizations of record evidence, lay opinions, and failure to resolve contradictory evidence, the ALJ's conclusion does not survive scrutiny even under the less restrictive 2017 regulations. A remand is warranted."); *Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis.").

Finally, the ALJ relied on the facts that Dr. Duclos did not personally examine Plaintiff and did not "have access to all of the medical evidence in the file, specifically exhibits 7F through 14F." *Id*. The Court is not persuaded that this proffered reason justifies the ALJ's discrediting of Dr. Duclos' opinion. State agency physicians are experts in Social Security disability programs. SSR 96-6p. An ALJ may rely on a reviewing state agency physician's findings even where there is a lapse of time between the state agency report and the ALJ's decision. *Cf. Chandler*, 667 F.3d at 361 ("The Social Security regulations impose no limit on

how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available."). In this case, the ALJ did not explain—nor is it apparent to the Court—how subsequent evidence, "specifically exhibits 7F through 14F[,]" contradicted or even undermined Dr. Duclos' opined moderate mental limitations. R. 23; *see also Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Notably, as previously discussed, the ALJ failed to point to any contradictory findings in Exhibits 7F, 8F, 10F, and 11F. R. 23. In short, the ALJ's proffered reasons and cited evidence do not establish that Dr. Duclos' moderate findings are inconsistent with other medical evidence in the record.

Furthermore, the Court cannot conclude that the ALJ's error in considering the consistency of Dr. Duclos' opinion with other evidence in the record is harmless. This is particularly so where Dr. Duclos opined, *inter alia*, that Plaintiff had moderate limitations in her ability to understand, remember, or apply information and in her ability to concentrate, persist, or maintain pace, and that she was limited to unskilled work instructions, R. 79, 94 R. 82–83, 98–99, but where the RFC does not reflect such limitations. R. 20. Notably, the vocational expert

agreed that a hypothetical individual with Plaintiff's vocational profile and the RFC found by the ALJ could not perform Plaintiff's past relevant work as a school secretary, which thet expert described as skilled. R. 60–61.

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[7] Moreover, remand is appropriate even if, upon further examination of Dr. Duclos' opinion and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

---

[7] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Duclos' opinion and the RFC determination, the Court does not consider those claims.

## VII.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  February 20, 2024                            *s/Norah McCann King*
                                    NORAH McCANN KING
                                    UNITED STATES MAGISTRATE JUDGE

24